77 F.3d 491
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby Joe FLOYD, Defendant-Appellant.
 No. 95-50047.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 5, 1995.
Decided Feb. 12, 1996.
 
 Before: BEEZER, BRUNETTI, and JOHN T. NOONAN, JR., Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Bobby Joe Floyd was convicted by a jury for armed bank robbery and forced accompaniment, in violation of 18 U.S.C. § 2113(a), (d), and (e). He appeals his conviction and sentence. He argues that the district court committed reversible error by admitting evidence of his post-arrest confession. He also contends that the district court improperly denied him credit for acceptance of responsibility in his sentence. We have jurisdiction. 28 U.S.C. § 1291.
 
 
 3
 I. Waiver of Miranda Rights.
 
 
 4
 This Court begins with a Due Process inquiry into whether the confession was voluntarily given. Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir.1991) (en banc), cert. denied, 502 U.S. 1031 (1992). The question is whether "under the totality of the circumstances the challenged confession was obtained in a manner compatible with the requirements of the Constitution." Id. (quoting Miller v. Fenton, 474 U.S. 104, 112 (1985)). Floyd argues that his statement was not voluntary because the FBI agents asked him if he wanted to talk with them, violating his Miranda rights.
 
 
 5
 Once a suspect who is in custody and is being interrogated asserts his right to remain silent, the interrogation must cease. Michigan v. Mosley, 423 U.S. 96, 104 (1975). The Supreme Court announced the prophylactic rule that after the right to counsel had been asserted by an accused, further interrogation of the accused should not take place unless the accused initiates further communication, exchanges, or conversations with the police. Edwards v. Arizona, 451 U.S. 477, 485 (1981), reh'g denied, 452 U.S. 973 (1981). In a plurality opinion, the Supreme Court clarified the Edwards rule, holding that a suspect "initiates" a conversation if he evinces "a willingness and a desire for a generalized discussion about the investigation; ... not merely a necessary inquiry arising out of the incidents of the custodial relationship [i.e., request for a drink of water]." Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983). In Oregon v. Bradshaw, the defendant asked police, "Well, what is going to happen to me now?" Id. at 1043. The Supreme Court interpreted this question as initiating a conversation.
 
 
 6
 In this case, Floyd was given his Miranda rights, and expressed a wish to remain silent. Thereafter, Floyd initiated conversation with the FBI agents while being transported to Metropolitan Detention Center, asking: "How'd you guys come onto me?" This question evinces a willingness and desire for a generalized discussion about the investigation. The question concerns the FBI agents' investigation leading up to Floyd's arrest. At that time, the FBI agents were allowed to ask Floyd if he wanted to talk with them.
 
 
 7
 Floyd contends that his case is distinguishable from Oregon v. Bradshaw because when his question was answered, he did not make any other comments to indicate that he wanted to talk about the robbery. This argument is unpersuasive. The rule in Oregon v. Bradshaw is not based on the defendant's reaction after the initiation of conversation by the defendant.
 
 
 8
 Floyd also asked if he could smoke his cigarettes. This question is a custodial question. The questions concerning his personal belongings and the cigarettes are red herrings, because Floyd previously asked how the agents had found him. Under Oregon v. Bradshaw, the FBI agents did not violate Floyd's Miranda rights by asking him if he wanted to talk with them after he initiated conversation.
 
 
 9
 Since it was proper for the FBI agents to ask Floyd if he wanted to talk with them, the confession was voluntary and the inquiry shifts to whether Floyd waived his Miranda rights. The inquiry of whether Miranda waiver was coerced has two prongs: 1) whether the relinquishment of the right was voluntary; and 2) whether the waiver was made with full awareness. Collazo, 940 F.2d at 415.
 
 
 10
 Since Floyd's statement was voluntary and not in violation of the Fifth Amendment, the voluntariness prong of the Miranda waiver is also met. Id. at 416. The next issue is whether the waiver was made knowingly and intelligently. "[T]he waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Colorado v. Spring, 479 U.S. 564, 573 (1987).
 
 
 11
 Floyd argues that because he was under the influence of drugs, he was unable to waive his Miranda rights knowingly and intelligently. The district court found that the fluidness in responding to questions in a logical, straightforward, and direct manner indicated that Floyd's mind was not overborne. This finding was based on testimony from FBI Special Agent Taglioretti and FBI Special Agent Johnson. Floyd presented testimony from Dr. Markman at the suppression hearing. Dr. Markman testified that Floyd would not have been able to knowingly waive his Miranda rights. However, the district court pointed out that Dr. Markman testified that if Floyd had taken a gram of heroin and a large amount of codeine as he claimed, that he would not have been able to carry on a logical and rational conversation. The district court's finding that Floyd's waiver of his Miranda rights was knowing and intelligent was not clearly erroneous. Collazo at 415.
 
 
 12
 II. Acceptance of Responsibility.
 
 
 13
 Floyd argues that the district court, in denying him credit for acceptance of responsibility, improperly weighed his choice to go to trial and his failure in drug treatment.
 
 
 14
 It is clear from reading the sentencing hearing transcript that the district court did not deny Floyd credit for acceptance of responsibility based on his failure in drug treatment. Rather, the statements about Floyd's failure in drug treatment and his drug addiction dealt with his motion for a downward departure based on the Bureau of Prisons' mishandling of his drug addiction.
 
 
 15
 We have held that the purpose of U.S.S.G. § 3E1.1(a) is to encourage defendants to accept responsibility for their actions at early stages of prosecution. United States v. Gonzalez, 897 F.2d 1018, 1021 (9th Cir.1990). The burden is on the defendant to show an affirmative acceptance of personal responsibility. United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990). Comment note two to U.S.S.G. § 3E1.1 states:
 
 
 16
 This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.
 
 
 17
 U.S.S.G. § 3E1.1, Comment (n. 2).
 
 
 18
 Floyd argues that there is "compelling evidence" of his remorse for his offense. Before sentencing, he submitted a letter to the district court expressing remorse. Floyd points out that he confessed to the FBI agents as to his offense. However, Floyd argued in this appeal that the district court erred by not suppressing this confession. This action does not support his claim of acceptance of responsibility. Floyd also argues that he would have been willing to have entered into a plea agreement, but no plea agreement was offered by the government; however, Floyd was not prevented by the government from entering a guilty plea. The district court did not clearly err in denying Floyd credit for acceptance of responsibility.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3